## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC LYONS,** | : | **Civil No. 3:07-CV-444** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JEFFREY BEARD, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

Under Rule 56 of the Federal Rules of Civil Procedure a party is entitled to summary judgment in its favor when "there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). This case aptly illustrates this basic tenet of federal civil practice, a tenet that defines how federal courts are to apply the law to the factual circumstances presented in an individual case.

The Plaintiff in this  civil action is Eric Lyons, a state inmate currently housed at the State Correctional Institution (SCI), Camp Hill. Lyons brings this complaint against 17 different correctional officers, ranging from the Commissioner of Corrections, Jeffrey Beard, to various institutional staff who directly oversaw Lyons' 2006 incarceration at the Special Management Unit at SCI Camp Hill.

The gravamen of Lyons' complaint is the allegation that correctional staff violated his Eighth Amendment right to be free from cruel and unusual punishment by soliciting other inmates to assault Lyons while he was housed in this prison unit dedicated to the treatment of recalcitrant inmates, by using excessive force against him when quelling this brawl between Lyons and a fellow inmate, and by failing to adequately investigate his complaints concerning this incident.

All 17 of the correctional Defendants have now moved for summary judgment asserting that as to each Defendant "there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). However, our review of the Plaintiff's claims as to these 17 different Defendants reveals that, while there are  no genuine issues as to any material facts regarding a number of Defendants, with respect to five Defendants the factual record is marked by conflicts and controversy. Therefore, mindful of the fact that summary judgment may be granted only where  "there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2), we recommend that this motion be granted, in part, and denied, in part, as discussed more fully below.

## II.    Statement of Facts and of the Case

### A.    Lyons Arrives at the Special Management Unit

This case arises out of events at the Special Management Unit of the State Correctional Institution, Camp Hill, in the Spring and Summer of 2006. With respect to some of these events, and some of the Defendants, the pleadings present two stark, and starkly different, factual narratives.

For his part, the Plaintiff, inmate Eric Lyons alleges that on April 5, 2006, he was transferred to the Special Management Unit at SCI Camp Hill from SCI Fayette. (Doc. 1, Section IV.) The Special Management Unit at SCI Camp Hill was intended for housing and care of prisoners who "exhibit behavior that is continually disruptive, violent, dangerous or a threat to the orderly operation of their assigned facility." Beard v. Banks, 548 U.S. 521, 525 (U.S. 2006)(internal citations omitted). At the time of his transfer to this institution, Lyons was serving a state sentence arising out of his conviction for an array of sexual assault, rape and involuntary deviate sexual intercourse charges in the Court of Common Pleas of Erie County. (Doc. 81, Ex. C.) According to Lyons, these charges related to the alleged sexual assault and rape of an 8-year old girl, offenses which Lyons claims inspired widespread enmity against the Plaintiff in the prison system.

## B. Lyons Allegedly Learns of Threats to His Safety Involving Inmates and Several Prison Staff

Lyons alleges that shortly after his arrival at the Special Management Unit, several correctional officers in the unit, including Defendants Ayers, Yohn, Brown, Tobias, Simpson and Darhower "harbored a personal dislike of me due to my crime" and resolved to ensure that Lyons did not successfully complete the Special Management Unit program, which enables an inmate to return to the prison general population. (Doc. 1, Section IV.) As part of this effort, Lyons alleges that some of these correctional staff began soliciting other inmates to assault Lyons, in order to create an affray which would support disciplinary charges against the Plaintiff.

Lyons has now provided specific proof in support of this claim with respect to four of the named Defendants. According to Lyons, in May of 2006 a fellow inmate, James Paluch, warned him that some correctional officers disliked him, and that he was being set up by correctional staff. Lyons has supported these allegations through an affidavit which he has executed and through declarations and affidavits from four fellow inmates: Sean Pressley, Steve Cage, Anthony Sides, and James Paluch. These declarations and affidavits allege that, shortly after Lyons' arrival in the Special Management Unit, four of the named Defendants, Correctional officers Ayers, Lyons. Simpson and Darhower, solicited two other inmates, Sides and Paluch, to assault Lyons because of their personal antipathy for him, offering these other prisoners

4

favorable treatment in return for their participation in this assault. (Doc. 95, Exs. C and D, Paluch and Sides declarations.) Paluch and Sides both allege that they refused these solicitations, and Paluch further asserts that he warned Lyons that staff were trying to set him up to be assaulted. (Id.)

### C. Lyons Claims to Have Warned Prison Staff of This Reported Threat

Lyons then claims to have communicated this threat to his safety to prison officials in May and June of 2006. However, Lyons' own sworn account of how he conveyed this information to prison officials reveals that his communications were vague, sporadic and fragmentary, providing prison staff little upon which to act.

For example, Lyons contends that he sent a note to Superintendent Kelcher on May 5, 2006, alerting the superintendent to his safety concerns. (Doc. 80, Ex. B. P.27.) However, Lyons' own description of this communication reflects that  it provided Superintendent Kelcher with virtually no meaningful details regarding his concerns. Rather, Lyons asserts that he simply: "sent [a] request slip to the superintendent and I let him know that I was experiencing problems with the staff." (Doc. 80, Ex. B, p.27.)

In addition, on or about June 1, 2006, Lyons claims that he had a progress review meeting with three correctional staff, Unit Manager Southers, Lieutenant Robert Kreider, and Deputy Superintendent Eugene Brannigan. (Id., pp.24-26.)

During this meeting, Lyons contends that he advised these correctional supervisors of his concerns, but Lyons' sworn account of this conversation is, once again, notably lacking in detail. Thus, Lyons simply insists that: "I took it before them and I let them know that, hey, you know, guards have it in for me. They've, you know, been going to inmates, setting up a contract," (Id., p.25), and stated that, "I mentioned that basically it was–that a conspiracy was being gauged against me, and that–you know, I mentioned Boyking's [sic] name." (Id., p. 26.) Lyons concedes, however, that at the time of this conversation: "I didn't have no evidence to substantiate, so therefore there was nothing [they] could do about it", (Id., p. 25) and concedes that given his lack of supporting evidence he was informed by prison staff that they could not fully credit his claims. (Id.)

Finally, Lyons asserts that he reported these threats to Sergeant Darhower, (Id., p. 28-9), but acknowledges that Darhower never disclosed this report to any other corrections official. (Id.) Indeed, given Lyons' current assertion that Darhower was one of the staff who was soliciting inmates to assault him, the Plaintiff readily concedes that Darhower would not have acted upon, or communicated his complaints to others. (Id.)

While Lyons has listed all of these corrections officials to whom he claims to have made complaints as Defendants, with respect to many of these named

Defendants their only reported involvement in this entire episode consists of receiving these vague, and unsubstantiated complaint from Lyons. Thus, with respect to Defendants Kelcher, Southers, and Brannigan, Lyons' claims are premised solely upon their alleged failure to act upon his vague claims that he "was experiencing problems with the staff," or that " hey, you know, guards have it in for me."[1] Thus, Lyons makes no assertions that Southers, Kelcher or Brannigan took any active role in the events leading up to his June 19, 2006 brawl with a fellow inmate or otherwise endangered him; rather, he simply faults them for failing to prevent that fight based upon his isolated and vague complaints.

### D. Lyons Is Involved in a Fight With a Fellow Inmate on June 19, 2006

According to Lyons in June of 2006, a handful of disgruntled correctional staff reached out to another SMU inmate, Anthony Boykins, soliciting Boykins to assault Lyons in return for favorable treatment. Two inmates, Sean Pressley and James Paluch, have submitted affidavits in support of these allegations. (Doc. 95, Exs. A and

---

[1]Lyons' complaint also lists another Defendant, Wayne Cole, in connection with these allegations. However, Lyons' proof with respect to Defendant Cole is wholly lacking, and consists solely of a claim by Lyons that Cole was present at one of these discussions, a claim which Lyons later recanted, testifying that "Cole wasn't there." (Doc. 80, Ex. B, p.26.) Finally, Lyons lists Stephen Sunday, whom he describes as a deputy at the prison as a Defendant, but when asked what Sunday did wrong in this case, Lyons simply asserted enigmatically that Sunday "did nothing." (Doc. 80, Ex. B, p.59.)

C.) In these affidavits, Paluch and Pressley recount statements allegedly made by Boykins, confirming that he had been solicited by guards to attack Lyons. (Id.) In addition, inmate Paluch described Boykins' receipt and retention of contraband food items immediately following his assault on Lyons, violations of prison policy that Paluch alleges were observed and condoned by Correctional Officers Yohn and Ayers, who had solicited the assault. (Id., Ex. C.)

In addition, Lyons has submitted declarations from inmates which purport to describe conversations between inmate Boykins and SMU unit staff planning the timing of an assault on Lyons, (Id., Ex. C) as well as affidavits which provide from the Plaintiff's perspective an account of the events leading up to Boykin's June 19, 2006 attack on Lyons in the SMU unit exercise yard. These declarations describe the affray between Lyons and Boykins as an assault instigated by Boykins, and further indicate that several correctional officers, including Defendants Ayers, Lyons. Simpson and Darhower, made statements immediately preceding the assault which indicated that they were aware of a plan by Boykins to attack Lyons. (Id., Exs. A-D.)

According to Lyons, the fight instigated by staff occurred on June 19, 2006, when Lyons and Boykins were placed in the same exercise yard at the prison and Boykins attacked Lyons. Lyons supports this claim with inmate declarations which recite that Boykins instigated this fight, and further allege that, when this fight

erupted in the SMU exercise yard between inmates Boykins and Lyons, correctional staff did not immediately respond to the assault. (Id.) According to Lyons, the correctional staff who were on-duty on June 19, 2006, and refrained from immediately intervening to aid him included three correctional officers who have been identified by the Plaintiff's witnesses as staff who were actively soliciting other prisoners to assault Lyons– Defendants Simpson, Yohn and Ayers.

In addition, Lyons alleges that several of these prison officials used excessive force against him when they did intervene in this fight. In particular, Lyons claims that Correctional Officers Ayers and Simpson assaulted him, (Doc. 80, Ex. B, pp.38-40) and that Lieutenant Kreider struck him with a baton in the course of quelling this brawl. (Id.) Lyons provides no other specific, articulable details concerning the involvement of any other correctional staff in this alleged use of excessive force.[2]

---

[2]The other staff identified as present and on duty on June 19, 2006, who are alleged to have delayed in intervening in this prison fight are Defendants Brown, Tobias, and Martz. (Doc. 1.) While these correctional officers are also identified as Defendants in this case, Lyons does not present evidence that any of these correctional staff had prior knowledge of any planned assault. Nor does he present proof that these staff assaulted him, and in fact it appears that several of these staff actually intervened and restrained his assailant inmate Boykins, thus protecting Lyons from further injury at the hands of this fellow prisoner. Nonetheless, Lyons names these correctional officers as additional Defendant, apparently because he faults them for their alleged, brief delay in intervening in this prison brawl.

For their part, the corrections Defendants employed in the Special Management Unit at SCI Camp Hill in June 2006 present a starkly different account of this episode, one which they also independently document. Without exception, these corrections staff emphatically deny Lyons' claims that they participated in a conspiracy to assault this inmate. These corrections Defendants also insist that the evidence, which consists, in part of reports which they have authored, conclusively shows that the June 19, 2006 brawl was actually instigated by Lyons, and not by inmate Boykins. (Docs. 80-84, Exs. D-M.)

E.   **Events Following The June 19, 2006 Confrontation at The Special Management Unit**

In the aftermath of this brawl, several events occurred which have relevance to the instant litigation. First, Lyons was disciplined for his alleged involvement in this fight. Second, Lyons lodged grievances with various prison officials, complaining that he had been the victim of a conspiracy by a handful of corrections staff and inmate Boykins. Third, a prison investigation discounted Lyons' complaints, resolving credibility issues between Lyons and corrections officials in favor of corrections staff.

These three events set the stage for the final series of allegations made by Lyons in his complaint, which described a cascading series of alleged failures by prison managers to appropriately respond to his grievances following this June 19,

2006, affray. Lyons contends that these failures are so grave that they, too, rise to the level of constitutional infractions by Defendants Reading, Orwig, Beard and Vaughn.

With respect to these four Defendants, Lyons' position is both simply stated and sparsely supported: First, Lyons insists that Lieutenant Reading, who conducted an investigation into his complaints following this June 19 episode violated his rights when he credited the denials of misconduct by corrections staff over Lyons' accusations leveled against those staff. (Doc. 80, Ex. B, pp.64-68.) Captain David Orwig, in turn, was the security captain at the prison, and Reading's supervisor. Lyons faults Orwig for failing to adequately supervise the investigation of this incident, and in very general terms alleges that Orwig as a security supervisor in some fashion failed to protect him, while acknowledging that Captain Orwig "didn't do anything as far as physical damage to me, but he failed to intervene." (Id. p.64.) Thus, the apparent premise of Lyons' claims against Orwig is that this Defendant's supervisory station makes him personally liable for any security shortcomings, and makes him personally culpable for the outcome of inquiries into inmate grievances conducted by his subordinates. (Id.)

As for Defendants Beard and Vaughn, the Secretary and Deputy Secretary for the Department of Corrections, the basis upon which Lyons seeks to hold them personally responsible for his alleged injuries can be succinctly stated: Lyons believes

they are personally liable to him for these Eighth Amendment violations because they as supervisors did not directly reply to letters he wrote to them after-the-fact complaining about the manner in which this incident was handled by prison staff. (Doc. 80, Ex. B, pp.52-3.) Lyons makes no other factual claims against either of these two senior corrections officials. (Id.)

## F.    This Litigation and the Pending Summary Judgment Motion

On March 8, 2007, Lyons commenced this action by filing a *pro se* complaint against 17 corrections Defendants and inmate Boykins. (Doc. 1.) These corrections Defendants included: Corrections Secretary Beard, Deputy Secretary Vaughn, Prison Superintendent Kelcher, Deputy Superintendent Brannigan, Deputy Stephen Sunday, Unit Managers Cole and Southers, Captain Orwig, Lieutenants Kreider and Reading, Sergeant Darhower, and the following six correctional officers–Officers Ayers, Simpson, Yohn, Brown, Tobias, and Martz.

In this complaint, Lyons alleged that these Defendants plotted to have him assaulted, failed to protect him from assault, used excessive force in curtailing an assault when it occurred, and failed to appropriately investigate his complaints about this alleged assault after it took place. (Doc. 1.) Inmate Boykins was dismissed from the case, (Doc. 7), and Lyons' action has proceeded against the remaining 17 corrections Defendants. Discovery has now closed, (Doc. 66), and the 17 corrections

12

Defendants have moved for summary judgment on all of Lyons' claims. (Doc. 71.) This motion has been fully briefed by the parties, (Docs. 78-84, and 93-95), and is now ripe for resolution.

For the reasons set forth below, we recommend that the motion be granted, in part, and denied, in part, as follows: Disputed material factual issues preclude summary judgment on behalf of Defendants Ayers, Simpson, Yohn, Darhower and Kreider, and the summary judgment motion should be denied as to these Defendants. As to the remaining Defendants, "there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Therefore, with respect to these remaining Defendants, it is recommended that the motion for summary judgment be granted.

III.  **Discussion**

A.  **Summary Judgment-Standard of Review**

The Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. While the Defendants' motion advances a host of individualized claims pertaining to the 17 individual Defendants named in this civil rights action, a consistent theme in the Defendants' pleadings is the assertion that "no reasonable jury" could find theme liable for any constitutional violations. (Doc. 78.)

To the extent that this articulation of the standard of review on summary judgment implies that the court may assess what evidence a jury might reasonably believe, we find that this standard of review misstates the scope of this Court's task under Rule 56. Rule 56, which governs summary judgment motions, provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Thus, our task is not to determine what facts reasonable jurors might find. Rather, we must assess whether the material facts are undisputed, determine what the

undisputed facts show, and then ascertain whether the Defendants are entitled to a judgment as a matter of law, based upon those undisputed facts.

### B.   Constitutional Standards Governing Eighth Amendment Claims.

In conducting this legal analysis we must also be mindful of the constitutional standards which govern both Eighth Amendment excessive force and failure-to-protect claims, since the gravamen of Lyons' complaint is that prison officials have violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's safety. Lyons faces an exacting burden in advancing either of these Eighth Amendment claim against prison officials in their individual capacities since these claims require a specific showing of intent in order to demonstrate deliberate indifference.

#### 1.   Excessive Force Claims

Eighth Amendment excessive force and failure-to-protect claims both entail a showing of some subjective intent to injure. In an excessive force case, that showing is made where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The issue of whether

excessive force was used is one which, in proper circumstances, can be determined

as a matter of law. In such cases, summary judgment may only be appropriate when

"it appears that the evidence, viewed in the light most favorable to the plaintiff, will

support a reliable inference of wantonness in the infliction of pain." Brooks v. Kyler,

204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 322). There are

several factors that a court examines in determining whether a correctional officer has

used excessive force in violation of the Eighth Amendment, including: "(1) 'the need

for the application of force'; (2) 'the relationship between the need and the amount

of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat

to the safety of staff and inmates, as reasonably perceived by responsible officials on

the basis of the facts known to them'; and (5) 'any efforts made to temper the severity

of a forceful response.'" Id. at 106.

## 2.     Failure-To-Protect Claims

Similarly, proof of a culpable subjective intent is a critical component of an

Eighth Amendment failure-to-protect claim. The leading case in the Third Circuit

addressing deliberate indifference in this prison context is found in Beers-Capitol v.

Whetzel, 256 F.3d 120 (3d Cir. 2001). In Beers-Capitol, the Third Circuit explained

the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety."  Id.

This deliberate indifference standard "is a subjective standard under Farmer – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."  Id. Thus, " '[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety' Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997) (quotation marks omitted)(emphasis added). Accordingly, "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Davis v. Williams, 354 F. App'x 603, 605-606 (3d Cir. 2009).

As explained in Beers-Capitol, in Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is

enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

The appellate courts recognize that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See, e.g. Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005). Instead, the Court of Appeals has interpreted Farmer to signal that "a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]" However, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information that presented a substantial risk to inmate safety. As the Supreme Court has observed in this context: "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was *longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk *and thus must have known about it*, then such

evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Farmer, 511 U.S. at 842-43(emphasis added).

Applying this standard, which looks to whether the alleged threat was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, court have rejected Eighth Amendment failure-to-protect claims on facts similar to those presented here, with respect to individual prison officials, where the evidence was insufficient to put those prison officials subjectively on notice of a substantial risk of serious harm to the inmate. Thus, an inmate's report to a staff member that other prisoners harbored antipathy for him based upon his history as a child molester, standing alone, is insufficient to establish that prison officials were on notice of, and deliberately indifferent to, a substantial risk of harm. Davis v. Williams, 354 F.App'x 603, 605-606 (3d Cir. 2009). Similarly, an inmate cannot establish sufficient subjective awareness of a serious risk of harm to satisfy an Eighth Amendment claim by simply asserting that staff were informed that the inmate was not getting along with others, O'Connell v. Williams, 241 F.App'x 55, 58 (3d Cir. 2007), or that staff were present when a fellow inmate bragged about harassing the plaintiff-prisoner. Counterman v. Warren County Correctional Facility, 176 F. App'x 234 (3d Cir. 2006). This proof simply does not meet the exacting standard of subjective knowledge called for under the Eighth Amendment. Instead, in such cases:

"[a]ctual knowledge can be proven circumstantially [only] where the general danger was obvious; that is, where 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.' " Counterman, 176 F. App'x at 238 quoting Farmer, 511 U.S. at 842-43.

Even where a plaintiff has presented sufficient evidence to allow a fact finder to reach the inference that a prison official had knowledge of the risk on the basis that risk was obvious, it is clear that an inference may not be compelled, and that the prison official must be permitted to show that he was actually unaware of the risk in question. Beers-Capitol, 256 F.3d at 132. Lastly, a prison official who is shown to have been actually aware of a risk to a prisoner-plaintiff can avoid liability if he shows that he responded reasonably to the risk, even if the response did not avoid the ultimate harm. Id.

### 3. Limits of Supervisory Liability

In addition to the foregoing analysis applicable to claims brought against supervisors under the Eighth Amendment alleging deliberate indifference to a known excessive risk, the courts also recognize that supervisors may be exposed to liability on the basis that they maintained deficient policies that resulted in the plaintiff sustaining an Eighth Amendment injury. In these kinds of cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test based

upon the reasoning of <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise. Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (3) the injury resulted from the policy or practice." <u>Beers-Capitol</u>, 256 F.3d at 134 (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989). Accordingly, these approaches are summarized as follows:

> In sum, to make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk that Whetzel posed, the plaintiffs must meet the test from <u>Farmer v. Brennan</u>: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious. For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, <u>Sample's</u> four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

<u>Id.</u>

In this setting the Third Circuit has noted that, in order to defeat a motion for summary judgment, a plaintiff alleging deliberate indifference on the part of prison officials "must present enough evidence to support the inference that the defendants

23

knowingly and unreasonably disregarded an objectively intolerable risk of harm." Id. at 132. However, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Thus, in order to defeat a motion for summary judgment, a plaintiff alleging deliberate indifference on the part of supervisory prison officials "must present

24

enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm." Id. at 132. Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinate. For example, in O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008), the court rejected an effort to hold supervisors liable for the acts of staff holding that:

> Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Id. See also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Moreover, in order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations. See Robinson v. City of Pittsburgh,120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Similarly, in Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004), the Court rejected an effort to extend civil rights liability to supervisory officials without proof of personal involvement or acquiescence in wrongdoing, stating:

Third Circuit case law recognizes that "(a) defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable. Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir.2003) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)). Consequently, a supervisor may be liable under 42 U.S.C. § 1983 for his or her subordinate's unlawful conduct if he or she directed, encouraged, tolerated, or acquiesced in that conduct. See Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253, 263 (3d Cir.1995); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir.1995). However, the mere assertion "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did" is insufficient to establish liability. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989). Likewise, a supervisor's mere failure to train, supervise or discipline subordinate officers does not state a basis for a § 1983 claim against the supervisor absent proof of direct participation by the superior in some unlawful conduct. Mobley v. City of Atlantic City Police Dept., No. Civ. A. 97-2086JBS, 2000 WL 363692 at *3 (D.N.J. March 30, 2000) (citing Brown v. Grabowski, 922 F.2d 1097, 1119-20 (3d Cir.1990)).

Nor can inmates sustain Eighth Amendment claims against prison officials based solely upon claims that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance

process not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). <u>See also</u> <u>Cole v. Sobina</u>, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

**C.**    **<u>Disputed Material Issues of Fact Preclude Summary Judgment in Favor of Defendants Ayers, Simpson, Yohn, Darhower and Kreider</u>**

These legal tenets guide our resolution of the summary judgment motion made on behalf of the 17 corrections Defendants named in Lyons' complaint, and compel a series of differing results for these disparate Defendants. At the outset, we find that with respect to five of these Defendants–Defendants Ayers, Simpson, Yohn, Darhower and Kreider–there presently exist disputed material issues of fact which preclude summary judgment.

As to Defendants Simpson, Yohn, Ayers and Darhower, those disputed factual issues could not be more profoundly contrasting and starkly presented. Simply put, Lyons accuses these Defendants of actively soliciting inmates to assault him, a charge which the Defendants flatly deny. Despite the Defendants' denials, Lyons has

proffered affidavits from fellow inmates who are prepared to testify that they witnessed such solicitations by the Defendants.

Lyons' evidence, if believed, would plainly make out an Eighth Amendment violation since to make out such a claim and, "survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Davis v. Williams, 354 F.App'x 603, 605-606 (3d Cir. 2009). Here, if his witnesses are believed, Lyons can show actual harm caused by inmate Boykins' assault, and his evidence, if credited by a jury, would plainly show a culpable state of mind on the part of the corrections officials who are alleged to have actively encouraged this assault. While the Defendants argue with great vigor that "no reasonable jury" could credit this proof, we cannot at this juncture engage in a speculative assessment of which evidence and which witnessers are more credible. That task must await another time, and another proceeding. Instead where, as here, we are presented with irreconcilable factual accounts, suffice it to say that we cannot find that "there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Therefore, the summary judgment motion must be denied as to these Defendants.

We also find that disputed factual issues make summary judgment inappropriate as to Defendant Kreider. With respect to this Defendant, Lyons' evidence, if believed, would show that Lyons warned Kreider that the correctional officers he directly supervised were plotting to have an inmate attack him. When that attack occurred, precisely as Lyons had warned that it would, Lyons' evidence viewed "in the light most favorable to the party opposing the motion," <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007), would show that Kreider assaulted Lyons, striking him with a baton, and that Kreider permitted Correctional Officers Ayers and Simpson to assault Lyons as well. (Doc. 80, Ex. B, pp.38-40.) While this proof is hotly contested by the Defendants, that contest does not provide a basis for summary judgment; rather, it defines a factual dispute which may not be resolved through a summary judgment determination.

### D. The Remaining Defendants named in Lyons' Complaint Are Entitled to Summary Judgment

While we find that disputed factual issues prevent the entry of summary judgment as to five of the Defendants named in Lyons' complaint, as to the remaining 12 Defendants we conclude that summary judgment is appropriate because for each of these Defendants "there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). These

twelve Defendants, all of whom are in our view entitled to summary judgment, are discussed separately below:

### 1. Lyons Presents No Articulable Basis for Holding Defendants Cole and Sunday Personally Liable in this Case

At the outset we find that Lyons has not presented any grounds for holding either Defendant Cole or Defendant Sunday personally liable to him for any constitutional tort. First, as to these Defendants Lyons' complaint violates the pleadings rules prescribed by the United States Supreme Court in Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009) in that it only contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. In fact, as to these Defendants the complaint does not even contain "[t]hreadbare recitals of the elements of a cause of action". Rather, these two Defendants are not specifically mentioned anywhere in the body of the complaint beyond being listed in the caption of this case, and warrant only passing, general, conclusory references in the body of the complaint. (Doc. 1.) This complete failure to articulate in the complaint a basis for holding these correctional staff accountable for some violation of the constitution now compels dismissal of these Defendants from this lawsuit. See Thomas v. Conway, No. 04-1137, 2005 WL 2030304 (M.D. Pa. July 21, 2005)(failure to name defendant in body of complaint compels dismissal).

Furthermore, Lyons' sworn deposition testimony actually underscores that these two corrections officials should be dismissed from this action. While Lyons names Cole and Sunday as Defendants, when asked what they did to harm him, Lyons' proof with respect to Defendant Cole was wholly lacking, and consisted solely of a claim by Lyons that Cole was present one time when Lyons voiced a vague concern about threats. However, even this threadbare claim was later abandoned by Lyons, who recanted this assertion, testifying that "Cole wasn't there" when he lodged this complaint. (Doc. 80, Ex. B, p.26.) Finally, Lyons listed Stephen Sunday, who he described as a deputy at the prison, as a Defendant, but when asked what Sunday did wrong in this case, Lyons simply asserted enigmatically that Sunday "did nothing." (Doc. 80, Ex. B, p.59.)

To be held personally liable for a constitutional tort, these Defendants must be alleged to have done something to harm Lyons. Therefore, in this case, where Lyons' pleadings and proof reflect that Sunday and Cole did nothing to harm him, these Defendants are clearly entitled to be dismissed from this lawsuit.

      **2.**      **Lyons May Not Maintain an Eighth Amendment Claim Against Defendants Kelcher, Brannigan, and Southers based Solely Upon The Fact That They Did Not Respond to His Vague and Isolated Complaints**

Similarly, Lyons may not maintain Eighth Amendment claims against Defendants Kelcher, Brannigan and Southers based solely upon the fact that he made

isolated and vague complaints to them in the days prior to this exercise yard brawl. In this regard, Lyons must make a precise and exacting showing to sustain an Eighth Amendment claim. As we have noted: "[T]o survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Davis v. Williams, 354 F.App'x 603, 605-606 (3d Cir. 2009).

With respect to these elements of a deliberate indifference claim, " 'a prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety.' Thus, the mere presence of circumstances from which a reasonable person *could* infer 'an excessive risk to inmate health or safety' is insufficient; rather, the official must actually make the inference and disregard it." Counterman v. Warren County Correctional Facility, 176 F..App'x 234, 238 (3d Cir. 2006)(citations omitted).

Therefore, in order to show deliberate indifference by these Defendants Lyons must come forward with evidence showing that these prison officials were actually aware of a substantial risk of harm and deliberately disregarded that risk. As the Supreme Court has observed in this context: Farmer, 511 U.S. at 842-43("If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate

attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk.")

Applying this standard, which looks to whether the alleged threat was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, court have rejected Eighth Amendment failure-to-protect claims on facts similar to those presented here, with respect to individual prison officials where the evidence was insufficient to put the prison official subjectively on notice of a substantial risk of serious harm to the inmate. Thus, an inmate's report to a staff member that other prisoners harbored antipathy for him based upon his history as a child molester, standing alone, is insufficient to establish that prison officials were deliberately indifferent to a substantial risk of harm. Davis v. Williams, 354 F. App'x 603, 605-606 (3d Cir. 2009). Nor can an inmate establish sufficient subjective awareness of a serious risk fo harm to satisfy an Eighth Amendment claim by simply asserting that staff were informed that the inmate was not getting along with others, O'Connell v. Williams, 241 F. App'x 55, 58 (3d Cir. 2007); or that staff were present when an inmate bragged about harassing fellow prisoners. Counterman v. Warren

County Correctional Facility, 176 F. App'x 234 (3d Cir. 2006). This proof simply does not meet the exacting standard of subjective knowledge called for under the Eighth Amendment, where: "[a]ctual knowledge can be proven circumstantially [only] where the general danger was obvious; that is, where 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.' " Counterman, 176 F. App'x at 238 quoting Farmer, 511 U.S. at 842-43.

This exacting legal standard is not met here with respect to Defendants Kelcher, Brannigan and Southers. As the outset, with respect to Defendant Kelcher, Lyons merely contends that he sent a note to Superintendent Kelcher on May 5, 2006 regarding safety concerns, but Lyons' own description of this communication reflects that it provided Superintendent Kelcher with virtually no meaningful details regarding his concerns. Rather, Lyons asserts that he simply: "sent [a] request slip to the superintendent and I let him know that I was experiencing problems with the staff." (Doc. 80, Ex. B, p.27.) Thus, Lyons' note to this Defendant was nothing more than an assertion by this inmate was not getting along with others, which as a matter of law is insufficient to make out an Eighth Amendment claim. See O'Connell v. Williams, 241 F. App'x 55, 58 (3d Cir. 2007).

As for Defendants Brannigan and Southers, Lyons simply asserts that on or about June 1, 2006, he had a progress review meeting with these correctional staff and,

during this meeting, contends that he advised these correctional supervisors of his concerns. However, Lyons' sworn account of this conversation is, once again, notably lacking in detail. Thus, Lyons simply insists that: "I took it before them and I let them know that, hey, you know, guards have it in for me. They've, you know, been going to inmates, setting up a contract,' (Id., p.25), and stated that, "I mentioned that basically it was–that a conspiracy was being gauged against me, and that–you know, I mentioned Boyking's [sic] name." (Id., p. 26.) Lyons concedes, however, that at the time of this conversation: "I didn't have no evidence to substantiate, so therefore there was nothing [they] could do about it", (Id., p. 25) and concedes that given his lack of supporting evidence he was informed by prison staff that they could not credit his claims. (Id.) Since an inmate's isolated report to a staff member that other prisoners harbored antipathy for him based upon his history as a child molester, standing alone, is insufficient to establish that prison officials were deliberately indifferent to a substantial risk of harm, Davis v. Williams, 354 F.App'x 603, 605-606 (3d Cir. 2009), this general claim–which Lyons concedes was wholly unsubstantiated–does not provide grounds for a finding of deliberate indifference to a serious security concern by Brannigan or Southers.

Since Lyons' proof simply fails to show any deliberate indifference by these officials when they were presented with vague claims which Lyons acknowledges he

had "no evidence to substantiate," Defendants Kelcher, Brannigan and Southers should also be dismissed from this action.

### 3. In the Absence of Proof of Any Culpable Actions on Their Part, Lyons May Not Hold Other Prison Staff Who Were On Duty at SCI Camp Hill on the Date He was Allegedly Assaulted Personally Liable for Damages

In his complaint, Lyons named other staff who were on-duty and present at the SMU on June 19, 2006 as defendants. Specifically, Lyons named three correctional officers who were allegedly on duty that day–Correctional Officers Brown, Tobias, and Martz–as Defendants.(Doc.1.) Yet, while these correctional officers are identified as Defendants in this case, Lyons' claims against these Defendants are completely lacking in content.

Indeed, what is most remarkable as to these Defendants is what Lyons does not claim with respect to them. First, Lyons does not present any evidence or allegations that any of these correctional staff had prior knowledge of any planned assault on him. Nor does he present proof that these staff assaulted him. Quite the contrary, it appears that several of these staff actually intervened and restrained his assailant inmate Boykins, thus protecting Lyons from further injury at the hands of this fellow prisoner. Indeed, in the course of his deposition, Lyons cannot even state whether these three officers ever touched him, sometimes stating that he was not touched by these Defendants, and on other occasions repeating hearsay accounts that these staff touched

him. (Doc. 80, Ex. B, pp. 62-64.) Thus, Lyons states at various times that Defendant

Martz "did not actually do any physical harm to me", (Id., p.64), and when asked about

the roles of Martz and Tobias conceded "they did not actually touch me."(Id.)

Similarly, when asked if Defendant Brown ever laid hands on him, Lyons replied "No,

Brown did not." (Id., p.62.) Nonetheless, Lyons still names these correctional officers

as additional Defendant, apparently because he faults them for their alleged, brief

delay in intervening in this prison brawl.

In this setting, where a constitutional violation must be premised on conduct

displaying deliberate indifference to an inmate's safety, Lyons's pleading and proof

as to these three correctional staff, who never harmed him and appear to have

intervened to prevent further injuries to Lyons at the hands of another inmate, are

plainly inadequate. Therefore, these Defendants should be dismissed from this action.

### 4. Lyons May Not Hold Prison Supervisors and Officials Personally Liable to Him Simply By Virtue of Their Supervisory Posts or Because He Was Dissatisfied With Their Responses to His Grievances.

Finally, in his complaint Lyons seeks to hold four supervisory officials–

Secretary Beard, Deputy Secretary Vaughn, Captain Orwig and Lieutenant reading–

personally liable to him. We find that Lyons' complaints as to these supervisory

Defendants are an odd admixture of *respondeat superior* liability, coupled with

complaints concerning the processing and resolution of grievances which he lodged

following this June 19, 2006 brawl. Specifically, Lyons complains that Lieutenant Reading, who conducted an investigation into his complaints following this June 19 episode violated his rights when he credited the denials of misconduct by corrections staff over Lyons' accusations leveled against those staff. (Doc. 80, Ex. B, pp.64-68.) Captain David Orwig, in turn, is simply identified as the security captain at the prison, and Reading's supervisor. In allegations which plainly sound in *repsondeat superior* liability Lyons faults Orwig for failing to adequately supervise the investigation of this incident, and in very general terms alleges that Orwig failed to adequately supervise prison security, while acknowledging that Captain Orwig "didn't do anything as far as physical damage to me, but he failed to intervene." (Id. p.64.) As for Defendants Beard and Vaughn, the Secretary and Deputy Secretary for the Department of Corrections, the basis upon which Lyons seeks to hold them personally responsible for his alleged injuries can be succinctly stated: Lyons believes these Defendants are personally liable to him because they as prison supervisors did not directly reply to letters he wrote to them after-the-fact complaining about the manner in which this incident was handled by prison staff. (Doc. 80, Ex. B, pp.52-3.) Lyons makes no other factual claims against either of these two senior corrections officials. (Id.)

These allegations are insufficient to state a claim upon which relief can be granted. Indeed, these claims fail for at least two reasons. First, to the extent that

Lyons attempts to hold these officials personally culpable based simply upon their supervisory status, his complaint runs afoul of he settled rule that civil rights liability may not be based solely upon notions of *respondeat superior*. It is well-settled that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Nor can Lyons convert his displeasure with these officials' responses to his grievances following this June 19, 2006, episode into an infraction of constitutional dimension. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 Fed. Appx. 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their

failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F.App'x 216, 218 (3d Cir. 2008).

These basic principles apply here, and compel the dismissal of Lyons' claims against Defendants Beard, Vaughn, Orwig and Reading, who may not be held liable simply because they were prison supervisors when these events occurred or were alleged to have failed "to take corrective action when grievances or investigations were referred to them." Id.

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED, that the defendants motion for summary judgment (Doc. 71) be GRANTED, in part, and DENIED, in part, as follows:

1.    The motion for summary judgment should be DENIED as to Defendants Ayers, Simpson, Yohn, Darhower and Kreider.

2.    The motion for summary judgment should be GRANTED as to Defendants Beard, Vaughn, Kelcher, Brannigan, Sunday, Cole, Southers, Orwig, Reading, Brown, Tobias, and Martz .

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified   proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of January, 2011.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
