**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC LYONS,** | : | |
| | : | **Civil Action No. 3:07-CV-444** |
| **Plaintiff** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **JEFFREY BEARD, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

### I.   INTRODUCTION

In this civil action, Plaintiff Eric Lyons has brought claims against a number of employees of the Pennsylvania Department of Corrections, alleging that these defendants violated his right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment when Defendants solicited other inmates to assault him while he was held in the Special Management Unit ("SMU") at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"). Plaintiff also alleges that Defendants used excessive force in their efforts to break up a fight between Plaintiff and Anthony Boyking, another inmate in the SMU at SCI-Camp Hill, whom Plaintiff claims corrections staff induced to assault him on June 19, 2006.

Now pending before the Court are two motions, one filed by each of the parties,

seeking differing types of relief in advance of trial in this case, which is currently scheduled to commence with jury selection on August 22, 2011.  In the first motion, Plaintiff seeks leave of court to propound additional discovery upon Defendants long after the discovery period has closed.  (Doc. 125.)  In the second motion, Defendants seek leave of court to make a limited amendment to their answer to Plaintiff's complaint more than three years after their initial answer was filed.  (Doc. 127.)

Defendants have opposed Plaintiff's request to conduct discovery after the cut-off of the discovery period, although in opposing the motion they have offered a number of compromises that they represent are intended to provide Plaintiff with relevant information, while avoiding the unfair burden of producing irrelevant and sensitive prison information out of time or unnecessarily.  For his part, Plaintiff has opposed Defendants' request for leave to amend a four responses contained in their original answer to his complaint in this case, arguing that the request was not timely made, and that he will be prejudiced if the request is granted.  The motions are fully briefed and are ripe for disposition.

We have considered both motions, and the briefs in support and opposition thereto.  In consideration of the parties' respective arguments, the Court has endeavored to remain mindful of the need to narrow the issues in this dispute in advance of the August trial of this matter, while at the same time working to ensure

that the issues in this case are fully and fairly resolved on their merits.  Guided by these considerations, and for the reasons explained below, Plaintiff's motion to re-open discovery will be granted, in part, and Defendants' motion to amend their answer will be granted.

## II.   DISCUSSION

### A.   Management of Pre-Trial Discovery is Discretionary.

Lyons's motion to re-open discovery in this case, and Defendants' response in opposition, call upon the Court to exercise its authority to regulate discovery in this case.  Issues relating to the scope and timing of discovery permitted under the Federal Rules of Civil Procedure rest in the sound discretion of the Court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

### B.   Plaintiff's Specific Discovery Requests.

During the course of discovery in this case, Plaintiff served a single request for production of documents to Defendants' prior counsel some time during 2008.  It appears that Plaintiff did not receive timely response to this request, and, accordingly, filed a motion to compel Defendants to respond.  (Doc. 36.)  In that motion, Lyons did not articulate the substantive basis for the requested discovery, but argued only that

he had not yet received a response. (Id.)  After Plaintiff filed this motion, Defendants'
prior counsel responded to Plaintiffs' initial discovery request, producing a number
of responsive documents, and objecting to some of Plaintiffs' requests. (Doc. 136, Ex.
A.)  Plaintiff did not challenge the adequacy of Defendants' response.

The parties agree that during their pre-trial conference held on April 18, 2011,
pursuant to Local Rule 16.3, Lyons requested that additional discovery be provided,
notwithstanding the fact that the discovery period in the case had long since expired.
Defendants responded by requesting that Lyons reduce his new discovery requests to
writing.  On April 20, 2011, Plaintiff sent Defendants' counsel a letter in which he
requested that Defendants respond to 10 additional discovery requests. (Doc. 126, Ex.
A.)

After reviewing Plaintiffs' letter, Defendants' counsel represents that she
examined Defendants' 2008 discovery response, and found that some of the items that
Lyons requested in 2011 had been previously requested and objected to by
Defendants' prior counsel.  (Doc. 136, at 3.)  Following this review, Defendants'
counsel contacted Plaintiff to advise him that Defendants were willing to provide
copies of his requested radiology reports and a "Problem List" from his medical
records.  (Id.; Doc. 126, Ex. A, Item Nos. 9 and 10.)  Additionally, Defendants agreed
to, and did, provide copies of these documents to Plaintiff free of charge in

consideration of the impending trial in this case.  (Doc. 136, Ex. B, Letter Dated May 4, 2011.)  In addition, counsel informed Plaintiff that with respect to his request for certain x-ray films, (Doc. 126, Ex. A, Item No. 5),  Defendants would bring the films to trial to the extent they even were found to exist, although Defendants would not waive any objection they might have to Plaintiff attempting to introduce them at trial.

Having made these concessions, however, Defendants informed Plaintiff that because discovery had closed in May 2010, they would not agree to produce additional requested materials.  Plaintiff's motion for leave to re-open or extend discovery in this case followed (Doc. 125), together with a brief in support (Doc. 126).

In responding to Plaintiff's motion (Doc. 136), Defendants initially argue that the request to re-open discovery should be denied simply because Plaintiff has not presented any reasonable explanation, or excusable neglect, for his failure to file a timely motion to compel discovery answers in this case.  However, after making this procedural argument, Defendants proceed to argue that Plaintiffs' motion should be denied for more substantive reasons, while at the same time offering to make certain information available to Plaintiff in the interest of judicial economy and fairness. While we appreciate Defendants' procedural argument, we find that Plaintiff's motion

should be resolved on its merits, with separate consideration of Plaintiff's remaining discovery requests. We consider these discovery requests *seriatim* below.

### 1.    Inmate Boyking's Misconduct Documentation/Query Listing.

Plaintiff has requested that Defendants be required to produce all records relating to Inmate Anthony Boyking's misconduct between 2004 and 2011, as well as Inmate Boyking's "complete misconduct query listing" from 1999-2011. (Doc. 126, Ex. A, Item Nos. 1 and 2.)

In response, Defendants note that they have previously provided Plaintiff with relevant misconduct information relating to the June 19, 2006 affray between Boyking and Lyons, which forms a centerpiece of this litigation. However, Defendants contend that it would be unfair to require them to produce seven years' worth of misconduct documentation for Boyking because such a request "is overbroad and unduly burdensome, as the documentation would likely be voluminous." (Doc. 136, at 7.) However, with respect to Plaintiff's request for Boyking's "query listing," Defendants have agreed to make available a printout from the Department of Corrections' computer system that summarizes misconduct that Boyking received between 1999 and 2011.

Upon consideration, although we appreciate Defendants' reasonable arguments that Plaintiff's discovery requests were dilatory, and that he has not fully articulated

the reason for his failure to seek more timely discovery in this case, we are also mindful that Defendants did undertake to produce some documents after the close of discovery, including substantive responses to requests to which they had previously objected.  Furthermore, we are sensitive to the fact that this litigation has proceeded somewhat fitfully, due in some part to the change of counsel for Defendants that occurred in the spring of 2010 and delays that appear to have existed before Defendants' replacement counsel entered her appearance.  Indeed, Defendants reasonably acknowledge that this occurrence contributed to "confusion that may have been caused" during the pre-trial stages of this case.  (Doc. 136, at 6.)  Weighing these various factors, we agree with Plaintiff that some form of limited, focused discovery is reasonable and warranted, although we also agree with Defendants that any discovery must be carefully tailored to avoid any undue burden at this late stage of the case, and that any discovery allowed must have clear relevance to Plaintiff's claims.

Having so found, we conclude that Plaintiff's request that Defendants produce Boyking's misconduct reports between 2004 and 2011 is unreasonably overbroad, and that information relating to misconduct that occurred after the June 19, 2006 altercation has no apparent relevance to Plaintiff's claims against Defendants in this case.  At the same time, we find that the misconduct information related only to Lyons's and Boyking's altercation on June 19, 2006, is too narrow to provide Plaintiff

with potentially relevant information about what the remaining Defendants may have

known about Boyking's propensity for violence, or a history of assaultive conduct that

he may have had prior to his affray with Lyons.  In order to ensure that Plaintiff has

reasonable access to potentially relevant evidence of Boyking's misconduct and

Defendants' knowledge thereof prior to the incident on June 19, 2006, while

minimizing any burden that Defendants' might face in responding to Lyons's belated

requests, we will direct Defendants to produce any misconduct reports that they have

for Anthony Boyking for conduct involving assaults, threats, and acts of violence

occurring between 2004 and June 19, 2006.  We further find that Defendants

willingness to provide Plaintiff with a printout of a summary of Boyking's misconduct

history between 1999 and 2011 is reasonable and sufficient to meet Plaintiff's request

for Boyking's "query listing."

### 2.    Inmate Boyking's PRC Reports.

Plaintiff next requests that Defendants provide him copies of Inmate Boyking's

Program Review Committee ("PRC") Reports from February 2006 through Boyking's

release from the SMU program.  (Doc. 126, Ex. A, Item No. 3.)  Plaintiff had

previously requested this information in his 2008 request for production of

documents, and Defendants' prior counsel objected on the grounds that the

information sought was privileged and confidential.  Renewing this request in his

current motion, Plaintiff insists that this information is relevant to show that
Defendants knew of Boyking's propensity for violence and the threat he posed to the
security of other inmates.

Although Defendants have produced one of Boyking's PRC reports, after
concluding that its relevance to Plaintiff's case was clear, Defendants have objected
to producing any additional PRC reports, contending that the Department of
Corrections carefully guards against dissemination of information contained within
the reports to the inmate community, and that release of such information to Plaintiff
would compromise institutional security and permit Plaintiff's access to sensitive
information about prison operations.  However, Defendants have agreed to provide
Boyking's PRC records to the Court for *in camera* review in order to balance Lyons's
"need for information contained in the PRC reports that reflects how Boyking
progressed through the SMU Program with the Department's real and legitimate
security concerns with providing personal information about Boyking to Lyons, and
allowing Lyons to possess copies of parts of Boyking's inmate file."  (Doc. 136, at 9-
10.)

Plaintiff is dismissive of Defendants' assertion that PRC information is closely
guarded and rarely disclosed during discovery on the basis that it contains highly
sensitive information about inmates and prison staff, and because the release of such

information is believed to allow inmates to manipulate prison procedures relating to

the custody and control, to the detriment and danger of other inmates and prison staff.

Plaintiff also suggests that Defendants should be found to have waived any objection

to the disclosure of Boyking's PRC reports because they voluntarily produced a single

such report that was issued on June 19, 2006, which Defendants' counsel obtained

permission to produce after finding that it was "very relevant to [Plaintiff's] claim .

. . ." (Doc. 136, at 9.)

As an initial matter, the Court commends Defendants' counsel's efforts to make

a document that she found to be "very relevant to [Plaintiff's] claim" available to

Lyons, despite the Department of Corrections' general policy disfavoring such

production, and the institutional and security concerns that the Department reasonably

has regarding the dissemination of such information to inmates.  Additionally, the

Court finds that Plaintiff has not made a sufficient showing to demonstrate that his

need for additional PRC reports would outweigh Defendants' security concerns, or

even to show the potential relevance of these documents.  Finally, we conclude that

Defendants' agreement to make these documents available for *in camera* review is a

reasonable and prudent compromise, made in a good-faith effort to address Plaintiff's

belated discovery claims, while at the same time paying fidelity to the Department's

legitimate need to maintain institutional security and limit the circulation of sensitive

prison information such as that contained within the PRC reports for SMU inmates. Accordingly, we will deny Plaintiff's motion to the extent it seeks to compel the production of Boyking's PRC reports *in toto*, and will instead direct the Department to provide copies of these reports to the Court for *in camera* review.  Further decisions regarding the extent to which these reports may be disclosed to Plaintiff will await the Court's review.

### 3.    Plaintiff's DC-17X From April 5, 2006 - June 21, 2006.

Next, Plaintiff requests that Defendants be required to produce his DC-17X, or cumulative adjustment record, for the approximately two-month period between April 5, 2006, and June 21, 2006.  Plaintiff previously requested this information in 2008, and Defendants' prior counsel objected to its disclosure at that time.  (Doc. 136, Ex. A, No. 9.)   According to Defendants, the information contained within DC-17X reports is confidential observational information by corrections staff, and the Department of Corrections generally seeks to limit disclosure of this information to inmates.  In addition to this general objection to disclosure of such reports, Defendants argue that Plaintiff has failed to articulate his reasons for seeking these reports in this case.  Defendants have offered to provide "relevant portions of the forms to the Plaintiff, with any confidential, security related or irrelevant information redacted." (Doc. 136, at 10.)  Alternatively, Defendants have expressed a willingness to provide

the DC-17X documents to the Court for *in camera* review.  (Id.)

In response, Plaintiff does not explain the reasons why he is seeking review of the DC-17X reports, but instead asserts, cryptically, that "he does not [wish] to go into detail" about his reasons for requesting the reports "due to his mistrust that the documents will be altered or changed by Defendants to cover the facts and truths." (Doc. 140, at 18.)  Plaintiff asks that the Court direct the DC-17X documents be submitted to the Court for *in camera* review, and that he will thereafter articulate "what specific information he is seeking from the DC-17X."  (Id. at 19.)

Upon consideration, the Court is unable to resolve this dispute without further understanding of what information is contained within the DC-17X reports themselves.  Since Defendants have expressed a willingness to provide the Court with unredacted copies for *in camera* review, and Plaintiff advocates a similar approach, we will direct Defendants to submit the DC-17X reports for the Court's review, and we will direct Plaintiff to provide a written explanation to the Court and Defendants as to the information he is looking for in these reports after they have been submitted to the Court.

### 4.    Grievances Filed by Inmates Paluch and Cage.

Plaintiff also requests that Defendants produce copies of all grievances filed by

inmates Paluch and Cage against the Defendants in this case. Plaintiff has claimed that both of these inmates are witnesses to the allegations set forth in the complaint, and he now alleges that grievances filed by these inmates "are relevant to this case after defendants have provided the misconduct reports of these inmates that indicate the possibility that these inmates were repeatedly harassed by staff, including some of the Defendants." (Doc. 140, at 19.)

We agree with Defendants that Plaintiff's request is overly broad and not clearly relevant to this case. Furthermore, we agree that another inmate's unsubstantiated allegations against a corrections officer or prison employee likely would not be admissible in this case, at least to prove Plaintiff's claims. We will therefore decline Plaintiff's invitation to compel Defendants to produce the grievances filed by each of these inmates against the named defendants in this case. To the extent that Defendants seek to discredit these witnesses at trial introducing misconduct reports issued to these witnesses, Plaintiff will have some opportunity to question the inmate-witnesses about their own past dealings with the defendants. However, we will not require Defendants to produce misconduct reports, which are essentially unsubstantiated hearsay allegations, as part of a limited re-opening of the discovery process in this case.

### 5.    Employment Records.

Finally, Plaintiff requests that Defendants produce the "Employment History Records" of any defendant involving "excessive use of force against inmates." (Doc. 126, Ex. A, Item No. 8.)  In his reply brief, Plaintiff makes clear that he is looking for Defendants to produce any grievances that have been filed against any of the corrections officers named in this lawsuit, or any "investigative reports" concerning these defendants insofar as the reports concern the "excessive use of force against any inmates." (Doc. 140, at 21.)  Because Plaintiff has only first clarified the employment records he is requesting by way of a reply brief, Defendants have not had an opportunity to respond to Plaintiff's explanation.

As an initial matter, and for the reasons set forth above, we will not require Defendants to produce any inmate grievances relating to any of the Defendants. Furthermore, we are without any information as to whether Defendants are in possession of any internal investigative reports relating to allegations of the use of excessive force by any of the named Defendants.  The Court will direct Defendants to advise the Court as to whether the Department of Corrections is in possession of any investigative reports with respect to allegations of excessive force against any of the remaining defendants.  Other than to direct Defendants to make such a submission, we find insufficient basis to compel Defendants to produce any such material before they are given a fair opportunity to explain whether any such materials exist, and, if

14

so, to raise any objections that they may have to Plaintiff's discovery of this information.   Any decision on whether Defendants will be directed to produce investigative reports must await a determination as to whether such reports exist, and, if they do, consideration of any objections Defendants may have to their disclosure to Plaintiff.

### B.      Motion to Amend Answer to Complaint.

In their motion, Defendants request leave to amend the answer that they filed in response to Plaintiff's complaint more than three years ago, based on counsel's discovery after conducting interviews with certain witnesses in the case that the answers provided in response to four allegations in the complaint were not accurate.[1] (Doc. 127.)  Defendants support their motion by noting that they filed their motion promptly after discovering the errors, and that under the Federal Rules of Civil Procedure, leave should to amend an answer should be granted liberally, and may generally be made at any time during the pendency of an action.  Finally, Defendants emphasize that Plaintiff will not be unfairly prejudiced by the amendments, because the amended answers are entirely consistent with Defendants' litigation position throughout this case, which has at all times been known to Plaintiff.  For his part,

_____

[1] See Doc. 127, Ex. 2, indicating proposed amendments to paragraphs 9, 10, 17, and 18 of Defendants' original answer.

Plaintiff disagrees, asserting that he will indeed be prejudiced if Defendants are permitted to change their answers only two months before trial.

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend a pleading should be given "when justice so requires." Fed. R. Civ. P. 15(a). As this language suggests, "Rule 15 . . . embraces '[a] liberal policy toward allowing amendments to correct errors in the pleadings [so as to advance] one of the basic objectives of the federal rules – the determination of cases on their merits." Hartley v. Pocono Mt. Regional Police Dep't, No. 3:CV-04-2045, 2009 U.S. Dist. LEXIS 24439, *14 (M.D. Pa. Mar. 24, 2009) (citing 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1474, at 533-36 (2d ed. 1990)).


Under Rule 15, a party is permitted to amend a pleading once without leave of court within 21 days after serving it, or within 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). However, after this initial period where pleadings may be amended as a matter of course, leave of court or written consent of the opposing party is required before amendment is permitted. Fed. R. Civ. P. 15(a)(2). As noted, this rule instructs that courts should grant leave to amend pleadings when justice requires. Id. The United States Supreme Court has provided further guidance, which

emphasizes that leave to amend pleadings should be freely given in accordance with the spirit of the Federal Rules of Civil Procedure:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

Rule 15 does not impose any time limit on when an amendment may be permitted, "and it is reported that amendments of pleadings have been allowed 'at the beginning, during, and at the close of trial . . .'" Hartley, 2009 U.S. Dist. LEXIS 24439, at *14-15 (quoting Wright, Miller & Kane, Federal Practice and Procedure § 1488, at 655). Accordingly, delay alone, without more, will generally not be sufficient to warrant denial of leave to amend. See Cornell & Co. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). Instead, courts should focus on whether the moving party has acted promptly after discovering the need to amend the pleading at issue, Hartley, 2009 U.S. Dist. LEXIS 24439, at *15, and whether the opposing party will suffer prejudice as a result of granting leave to amend, Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938-39 (3d Cir. 1984).

Indeed, the Third Circuit has held that "prejudice to the non-moving party is the touchstone for the denial of an amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1414

17

(3d Cir. 1993) (citation and internal quotation marks omitted).[2]  In the absence of prejudice to the non-moving party, courts have permitted defendants to amend their answers long after the complaint or answer was initially filed.  See Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234-35 (2d Cir. 1995) (defendant permitted to amend answer more than four years after complaint filed); King v. Cooke, 26 F.3d 720, 723 (7th Cir. 1994) (appeals court found no abuse of discretion where district court permitted defendant to amend answer 3 years after initial answer filed).

With these considerations in mind, we find that Defendants' motion to amend their answer should be granted.  The Court is satisfied that replacement counsel for Defendants proceeded appropriately, and promptly, by seeking leave to amend after discovering that four responses in the initial answer were inaccurate.  Furthermore, the Court cannot perceive how Plaintiff will be unfairly prejudiced by the discrete amendments proposed, as it appears clearly that these amended answers will be entirely consistent with Defendants' litigation position throughout this action – a

---

[2] "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay . . . or futility of amendment."  Lorenz, 1 F.3d at 1414. (citation omitted).  For these purposes, "[d]elay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court" or when the moving party failed to utilize previous opportunities to amend.  Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008).  We find no such "undue delay" in this case.

position that Plaintiff has clearly understood.  Plaintiff will have an occasion to submit

evidence in support of his assertions in paragraphs 9, 10, 17, and 18, and to cross-

examine Defendants to the extent they dispute these allegations during their

testimony.  Furthermore, the Court finds that permitting Defendants to amend their

answer is substantially likely to further "one of the basic objectives of the federal rules

– the determination of cases on their merits."  Hartley v. Pocono Mt. Regional Police

Dep't, No. 3:CV-04-2045, 2009 U.S. Dist. LEXIS 24439, *14 (M.D. Pa. Mar. 24,

2009) (citing 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal

Practice and Procedure § 1474, at 533-36 (2d ed. 1990)).

Defendants' good faith and prompt action, the lack of prejudice to Plaintiff, and

the institutional interest in ensuring that this action is resolved fully and fairly on its

merits impel the Court to find that Defendants' motion to amend should be granted.

## III.  **ORDER**

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED

THAT:

1.  Plaintiff's Motion for an Enlargement of Time, Nunc Pro Tunc, to Extend the Discovery Deadline (Doc. 125) is GRANTED in part and DENIED in part, as follows:
    a.  On or before **Monday, July 11, 2011**, Defendants shall provide Plaintiff with copies of all misconduct reports issued with respect to Inmate Anthony Boyking between 2004 and June 19, 2006.

    b.  On or before **Monday, July 11, 2011**, Defendants shall provide

19

the Court with unredacted copies of Inmate Anthony Boyking's Program Review Committee ("PRC") Reports for the period from February 2006 through his release from the SMU at SCI-Camp Hill.

c.     On or before **Monday, July 11, 2011**, Defendants shall provide the Court with unredacted copies of Plaintiff's DC-17X From April 5, 2006 - June 21, 2006.

d.     On or before **Wednesday, July 13, 2011**, Plaintiff shall provide the Court and Defendants with a written explanation that articulates the specific information he is seeking in the DC-17X documents, and the relevance of this information to his claims.

e.     On or before **Monday, July 11, 2011**, Defendants shall advise the Court and Plaintiff whether the Department of Corrections has within its possession any investigative reports relating to allegations of excessive force made against any of the remaining defendants in this case and, if so, whether Defendants object to producing such reports to Plaintiff.

In all other respects, Plaintiff's motion to conduct further discovery is DENIED.

2.     Defendants' Motion for Leave to Amend Answer to Plaintiff's Complaint (Doc. 127) is GRANTED.

3.     The Clerk of Court is directed to place Defendants' amended answer (Doc. 127, Ex. A) on the docket of this case.


/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

Dated:  June 17, 2011