## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC LYONS,                          :
                                     :
        Plaintiff,                   :        Civil Action No. 3:07-CV-444
                                     :
        v.                           :
                                     :
JEFFREY BEARD, et al.,               :        (Magistrate Judge Carlson)
                                     :
        Defendants.                  :

## MEMORANDUM OPINION

### I.    Statement of Facts and of the Case

In this action, Plaintiff Eric Lyons has sued past and present employees of the

Pennsylvania Department of Corrections at the State Correctional Institution at Camp

Hill ("SCI-Camp Hill").  Plaintiff alleges that in May and June of 2006, certain

correctional officers actively solicited inmates within the Special Management Unit

("SMU") at SCI-Camp Hill to assault him, and that other correctional supervisors

ignored Lyons when he warned them that the officers they supervised were planning

to have him attacked.

Plaintiff also claims that on June 19, 2006, while Lyons was housed in the SMU

at SCI-Camp Hill, he engaged in a fight with another SMU inmate, Anthony Boyking.

Plaintiff has alleged that Boyking initiated a fight with him after being urged to do so

by correctional officers.  Plaintiff further contends that certain of the defendants failed

to intervene or stop the fight until Boyking yelled for help, and that once they intervened, these Defendants used excessive force in subduing Lyons.  Lyons claims to have suffered physical injuries as a result of both the fight with Lyons and Defendants' alleged use of excessive force.  Plaintiff brought this lawsuit claiming that these alleged actions violated his rights under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.  A jury trial in this case is scheduled to commence on August 8, 2011.

Now pending in the above-captioned action is a motion *in limine* in which Defendants request entry of an order precluding Plaintiff from seeking to introduce certain evidence at trial.  (Doc. 149.)  First, Defendants seek a pretrial order preventing Plaintiff from offering his own lay opinion testimony about physical symptoms that he claims to have suffered as a result of the June 19, 2006 affray, and about the result of x-rays and other medical diagnoses that require expert testimony.  Second, Defendants argue that Plaintiff should be precluded from introducing testimony from inmate-witnesses who expects to testify about other wrongs that Defendants allegedly committed within the SMU that are unrelated to the events of June 19, 2006.  The motion is now fully briefed and ripe for disposition.

Upon consideration, and for the reasons that follow, we will grant Defendants' motion to prevent Plaintiff from offering his own lay testimony about his x-ray results

or about physical symptoms that he claims were caused by Defendants.  We will also grant Defendants' motion to exclude testimony of other inmate witnesses about other wrongs that Defendants allegedly committed within the SMU that are entirely unrelated to the events of June 19, 2006.  We will, however, offer Plaintiff one final opportunity to submit a proffer in advance of trial that clearly explains the relevance and admissibility of inmate-witness testimony about events unrelated to those occurring on June 19, 2006.[1]

## II.   **Discussion**

### A.   **Motion to Preclude Plaintiff From Testifying at Trial Regarding X-Rays or About Medical Diagnoses that Would Require Expert Testimony.**

In the first part of their motion, Defendants seek to prevent Plaintiff from testifying and presenting x-ray evidence about his alleged injuries, and his allegation that his fractured rib healed improperly, without the aid of expert testimony.  In addition, Defendants ask that Plaintiff be prevented from offering testimony that he

---

[1]  We recognize that Plaintiff has already attempted to make such a proffer, both in a notice that he filed about these witnesses' relevance to this case (Doc. 117), and in his brief opposing Defendants' motion in limine (Doc. 163). Although we have not found that Plaintiff has articulated a legitimate basis under the Federal Rules of Evidence for introducing the testimony of inmate-witnesses about events that are unrelated in time or scope to the events that occurred within the SMU on June 19, 2006, we want to ensure that Plaintiff – who is proceeding *pro se* in this action – has every opportunity to establish a legitimate basis for introducing such evidence in advance of trial.

is still experiencing symptoms caused by the fight with Boyking five years after the incident took place.

As a legal basis for excluding Plaintiff's testimony, Defendants observe that Rule 701 of the Federal Rules of Evidence places strict limits on the scope of opinion testimony that may be given by lay witnesses, and the opinion testimony that Plaintiff seeks to introduce concerns medical issues about which Plaintiff is incompetent to testify.  In addition, Defendants argue that Plaintiff's admission that he seeks to testify about what a physician told him about his x-rays and injuries is a clear indication that Plaintiff intends to introduce hearsay evidence, and this should be disallowed.

Rule 701 provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Civ. P. 701.  In this case, Defendants base their objection on subpart (c) of the Rule, and contend that Plaintiff – who has not been qualified as an expert in this case – improperly seeks to offer his own testimony and opinion about x-ray films and medical issues about which he is not qualified to offer an opinion.  Defendants note

that courts have disallowed lay individuals from offering medical opinion testimony about their own conditions.  See Chappell v. Mandeville, No. 03-653, 2009 U.S. Dist. LEXIS 26782, at * (E.D. Cal. Mar. 31, 2009) (finding that plaintiff's lay opinion testimony about the findings of an x-ray was not competent to create a material dispute about the inconclusiveness of the x-ray); Mattioli v. Media News Group, No. 97-4846, 1999 U.S. Dist. LEXIS 14510, at *4 n.1 (E.D. Pa. Sept. 8, 1999) (plaintiff not competent to testify about cause of his stroke).  See also Layton v. Yankee Caithness Joint Venture, L.P., 774 F. Supp. 576 (D. Nev. 1991) ("Where a fact issue as to the cause of an injury can be established only by men skilled in medical science, it must be established by the testimony of such men. . . . Simply put, where a question of fact is beyond the comprehension of the ordinary lay person, expert testimony is required to prove that fact.").

In response, Plaintiff observes that there is no dispute between the parties that he did, in fact, suffer a broken rib during his fight with Boyking.  Accordingly, Plaintiff contends that the only disputed issue is whether Defendants are responsible for the injury he suffered, or whether they caused it directly through the application of excessive force while separating Plaintiff and Boyking after their altercation.

We agree with Plaintiff that the issue of whether he suffered a broken rib does not appear to be in dispute – indeed, it appears that Defendants will be presenting an

expert witness who is prepared to testify that Plaintiff's fractured rib was subsequently healed without deformity as of February 7, 2007. We also agree that Plaintiff should be permitted to testify about symptoms that he may have suffered after his fight with Boyking, and about pain that he claims to have suffered as a result of this fight and the alleged conduct of corrections officers in breaking up the altercation. Rather, what Defendants appear to be requesting is that the Court prohibit Plaintiff from offering specific medical opinion testimony about what is shown on x-ray films, and about the medical basis for Plaintiff's alleged symptoms, particularly to the extent Plaintiff intends to offer opinion testimony that will conflict with the testimony of a qualified medical expert.

Upon consideration, we agree that Plaintiff has not demonstrated that he is competent to offer medical opinion testimony about the injuries he is alleging, including those he alleges to have suffered after February 7, 2007, and we will enter an order precluding Plaintiff from offering such testimony, which we find to be plainly improper under Rule 701's limits on opinion testimony. Moreover, we find that Plaintiff is not competent to testify about x-ray films, or what such x-ray films reveal, and we will not permit Plaintiff to introduce such film to the jury and offer his own testimony about it.

Plaintiff complains that he should be allowed to testify at trial about verbal statements that one of his treating physicians, Dr. Smith, allegedly made to him about his injuries and the results of his x-rays, and that in offering such testimony Plaintiff would be doing no more than telling the jury his own understanding of his injuries as a result of Dr. Smith's explanation to him.  We disagree.

Federal Rule of Evidence 802 supplies the general rule that hearsay evidence is not admissible at trial.  Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  In this case, what Plaintiff proposes to offer is classic hearsay evidence: he seeks to testify to the jury about what Dr. Smith allegedly told him about his injuries and their cause, and to offer this testimony for its truth.  This he cannot do under the Rules of Evidence, and we will not permit Plaintiff to testify at trial about what Dr. Smith may have told him about his broken rib or about his x-ray films, to the extent that Plaintiff is attempting to introduce such evidence in order to establish the truth of the matter asserted. Of course, if Dr. Smith has relevant and competent testimony as a result of his own examination and treatment of the Plaintiff nothing prevents the Plaintiff from seeking to present that evidence through Dr. Smith by calling the doctor as a witness.

However, we will not permit the Plaintiff to characterize in a hearsay fashion what he believes and understood that the doctor would have said..

**B.    Testimony and Evidence of Other Wrongs in the SMU Not Related to the June 19, 2006 Incident.**

On May 4, 2011, Plaintiff filed a document entitled "Plaintiff's Showing of Relevance for Inmate Witnesses." (Doc. 117.)  In this document, Plaintiff lays out his reasons for soliciting testimony from certain inmate witnesses in the custody of the Department of Corrections who are expected to testify via video conference at trial.

Plaintiff explains that he intends to offer testimony from Inmate Michael Bundy, who Plaintiff expects to testify about "conduct, character, habit, and the routine practices of Defendants and the SMU to set up inmates to fight in the exercise yard and methods employed to interfere with an inmate's release from the SMU program." (Id. ¶ 2.)  In addition, Plaintiff intends to solicit testimony from Inmate Robert Hankins, who is prepared to testify about "the various methods and tactics employed by officials in the SMU program in order to prevent inmates from completing the program, including, but not limited to, arranging for disliked inmates to fight in the exercise yard."  (Id. ¶ 4.)  Plaintiff indicates that Inmate Sean Pressley will testify about, among other things, "the character and conduct of the Defendants to set inmates up in the yard to fight or yell out their cell doors at each other so they could receive

8

misconducts." (<u>Id.</u> ¶ 7.)  Inmate Telly Royster is expected to offer similar testimony.

(<u>Id.</u> ¶ 8.)

Defendants have moved for the Court to enter a pre-trial order preventing

Plaintiff from introducing the foregoing testimony on the grounds that the testimony

is impermissible under Rule 404(b) of the Federal Rules of Evidence.[2]  Rule 404(b)

provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible
> to prove the character of a person in order to show action in
> conformity therewith.  It may, however, be admissible for
> other purposes, such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of
> mistake or accident, provided that upon request by the
> accused, the prosecution in a criminal case shall provide
> reasonable notice in advance of trial, or during trial if the
> court excuses pretrial notice on good cause shown, of the

---

[2] In addition, Defendants submitted a second motion in limine arguing that
the Court should also exclude the testimony of Inmates Hankin and Royster
because these witnesses were not housed at SCI-Camp Hill on or near any of the
dates Defendants contend are relevant to the claims in this case.  (Doc. 158)
Plaintiff has not yet responded to this motion.  Because we are providing Plaintiff
with one final opportunity to explain the relevance and admissibility of the
intended testimony of inmate-witnesses about the conduct of Defendants that is
not directly related to the June 19, 2006, incident at issue in this case, Plaintiff will
necessarily be required to explain the relevance and admissibility of the testimony
of Inmates Hankin and Royster.  To that Plaintiff is unable to make this
demanding showing, the Court will not permit Inmates Hankin and Royster to
testify at all in this case, and will enter an order quashing the subpoenas issued to
these witnesses, and modify the Court's June 23, 2011, order authorizing Plaintiff
to engage in limited communication with the inmate witnesses he intends to call
prior to trial.

general nature of such evidence it intends to introduce at
trial.

Fed. R. Evid. 404(b). The Third Circuit has directed district courts to apply a four-part

test in order to determine whether to admit evidence under Rule 404(b):  (1) the

evidence must have a proper purpose; (2) the evidence must be relevant; (3) the

probative value of the evidence must outweigh its potential for unfair prejudice; and

(4) if the evidence is permitted, the court must charge the jury to consider the evidence

only for the limited purpose for which it is admitted.  United States v. Rahamin, 168

F. App'x 512, 519 (3d Cir. 2006) (citing United States v. Cruz, 326 F.3d 392, 395 (3d

Cir. 2003).

Considering these factors, it is clear that to the extent Plaintiff is intending to

solicit testimony from inmate witnesses about other alleged wrongs or past practices

in an effort to show that the alleged incident on June 19, 2006, was in conformity with

those past wrongs or practices, the testimony is improper under Rule 404(b).

Although we appreciate that Rule 404(b) is a "rule of inclusion rather than exclusion,"

United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1998), the plaintiff is attempting

to prove that the conduct of corrections officials in this case is similar to past practices

of these (or perhaps other) corrections officers within the SMU at other times.  Such

testimony plainly runs afoul of Rule 404(b)'s prohibition against introducing

"[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."

Curiously, in his brief in opposition to Defendants' motion *in limine*, Plaintiff declines the opportunity to explain how the evidence might be admissible under Rule 404(b), or to address any of the factors identified in United States v. Rahamin, 168 F. App'x 512, 519 (3d Cir. 2006).  Instead, Plaintiff contends that he does not intend to introduce this evidence under Rule 404(b), but instead as habit evidence under Rule 406.  In short, Plaintiff is arguing that corrections officers within the SMU had a "habit" of setting up inmates to fight one another on the exercise yard or while on work detail, and of harassing disliked inmates and interfering with their ability to complete the SMU program.  Plaintiff misapprehends what constitutes habit evidence under Rule 406.

Federal Rule of Evidence 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion as in conformity with the habit or routine practice.

Fed. R. Evid. 406.  The Advisory Committee Notes to Rule 406 explain that habit "describes one's regular response to a repeated specific situation . . . such as the habit

of going down a particular stairway two stairs at a time, or of giving the hand signal for a left turn . . . . The doing of habitual acts may become semi-automatic." Fed. R. Evid. 406 Advisory Committee Notes (1972); see also United States v. Wright, 206 F. Supp. 2d 609, 615 (D. Del. 2002) ("[T[o qualify as habit evidence, the proffered evidence must be specific and particular."). In the case at bar, the extremely generic and vague proffer of testimony from the inmate witnesses fails to satisfy either of these requirements. Nothing in Plaintiff's statement of relevance suggests specificity or particularity.

Lyons has simply not proffered any evidence that could be classified as habit evidence under Rule 406. Not only has Plaintiff failed to make an offer of proof as to what, exactly, each of the inmates witnesses is expected to testify to with respect to alleged "habit" evidence, but he has provided no indication at all that would even suggest that the testimony that might be offered involved a repeated response to a specific and similar situation. Indeed, although we expect that Lyons is hoping the inmate witnesses will testify about arranged fights within the SMU, or about harassment of other inmates within the SMU, he has not offered any specifics about what the inmate witnesses are expected to say at trial. In the absence of such a showing, and because we find that the testimony proposed by these inmate witnesses falls far short of what is required in order to introduce evidence of "habit" under Rule

406, we will grant Defendants' motion to prevent the inmate witnesses from testifying about unspecified past wrongs or practices that are offered in an effort to show that Defendants had a "habit" of setting up inmate fights, and of harassing disliked inmates.

Although we will grant Defendants' motion, we will allow Lyons one final opportunity to explain both the relevance and admissibility of the proffered inmate witness testimony, and to ensure that such explanation takes into account the guidance and instruction provided in this order. Because we agree with Defendants that issues regarding inmate-witness testimony should be resolved prior to trial in order to ensure that the proceedings are efficient and orderly, we will direct that Lyons offer any final argument on or before Friday, July 30, 2011, to explain why the inmate witnesses he has identified should be permitted to testify about alleged events that are unrelated to those that occurred in the SMU on June 19, 2006.

### III.   Order

Accordingly, for the reasons set forth above, Defendants' motion *in limine* (Doc. 149) is GRANTED as follows:

1.   Plaintiff will not be permitted to testify at trial about the results his x-ray films, or to testify about what Dr. Smith may have told him about his injuries or the results of his x-rays, or that an improperly healed broken rib is the cause of physical symptoms he claims to have suffered. However, Plaintiff will be permitted to testify about his symptoms to the

extent that any symptoms he claims to have suffered were the natural and probable result of the rib fracture he sustained on June 19, 2006.

2.      No inmate-witness will be permitted to testify about events that are unrelated to the June 19, 2006, incident that is the subject of this lawsuit in order to prove that Defendants had the "habit" of arranging fights between inmates or otherwise harassing disliked inmates or preventing them from graduating from the SMU.

3.      On or before **Friday, July 29, 2011**, Plaintiff may submit a final proffer about the intended testimony of inmate-witnesses in order to demonstrate that their testimony about events not directly related to the June 19, 2006, incident that is the subject of this action is both relevant and admissible. If Plaintiff submits such a proffer, he is instructed to take into account the guidance set forth in this order.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: July 21, 2011