**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIC LYONS, | : | Civil Action No. 3:07-CV-444 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Carlson) |
| | : | |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

## I.   INTRODUCTION

Plaintiff Eric Lyons commenced the above-captioned action on March 8, 2007, bringing claims against a number of supervisory officials with the Pennsylvania Department of Corrections, as well as several corrections officers stationed at the State Correctional Institution at Camp Hill, where Lyons was formerly incarcerated as an inmate housed in the Special Management Unit.  Specifically, Lyons alleged that Defendants were liable for violations of his Eighth Amendment right to be free from cruel and unusual punishment after they facilitated or caused him to become engaged in a fight with Anthony Boyking, another inmate in the SMU, a fight he alleges resulted in him suffering physical injuries.[1]  Lyons also claimed that these

---

[1] Lyons is a convicted violent sex offender, having been found guilty of taking a young girl from her home at knifepoint, and then raping and sodomizing her before abandoning her beside a stretch of railroad tracks.  The victim survived

officers subjected him to excessive force after they intervened to stop the altercation between the two inmates.

After the majority of the named Defendants, including supervisory officials with the Department of Corrections, were dismissed from this action, the parties engaged in discovery and further litigation. Following this process, Lyons's remaining claims against Defendants Robert Kreider, Edward Ayers, C.O. Simpson, Matthew Yohn, and Sergeant Garhower were tried before a jury between September 26, 2011, and September 29, 2011. As he had throughout this litigation, Lyons proceeded *pro se* at trial, acting as his own counsel. Following the conclusion of the evidence and argument, and after receiving instructions on the applicable law, the jury returned a verdict in favor of Defendants on all claims. (Doc. 205)

---

this brutal assault, and Lyons was thereafter tried and convicted of these crimes. Lyons is presently serving a lengthy prison sentence resulting from this conviction, and by his own account he has spent a considerable part of his incarceration in either the long-term segregation unit, or the special management unit. His theory in this civil litigation is that the nature of his crime caused him to be considered a pariah in prison, and inspired corrections officers to plot to have Lyons assaulted by another inmate, to permit such an assault to take place, and then to use excessive force against Lyons in the course of breaking up the affray. Thus, the nature of Lyons's criminal offense was not a secret in this action, as Lyons informed the jury about his criminal conviction at the outset of his opening statement at trial, and explained how it formed the basis for his legal claims against the Defendants.

On October 17, 2011, Lyons filed a motion for a new trial, and a motion requesting that he be provided with copies of trial transcripts free of charge. (Docs. 207, 208) Although Lyons represented that he would be filing briefs in support of these motions in accordance with the 14-day limitation imposed by Local Rule 7.5, Lyons failed to do so. Instead, one month later, on November 16, 2011, Lyons filed a motion seeking an extension of time to file briefs in support of the motions. (Doc. 209) The Court granted this motion on November 17, 2011, directing Lyons to file his briefs on or before December 16, 2011. (Doc. 210)

Once again, Lyons failed to file briefs in accordance with the enlarged briefing schedule that he had requested. In an abundance of caution, the Court did not immediately enter an order deeming the motions to be withdrawn, as would typically be permitted under Local Rule 7.5. Instead, the Court waited several additional days before acting, until on December 22, 2011, the Court concluded that Lyons had consciously determined to abandon the two motions. On that day, the Court entered a memorandum order concluding that Lyons's two motions were deemed withdrawn. (Doc. 211)

Remarkably, just hours after the Court had entered this memorandum order, the Clerk of Court received a brief in support of Lyons's motion for a new trial. (Doc. 212) Although the Court finds that the brief is plainly untimely, and that the Court

would be within its discretion to stand on its prior ruling that the motion had been deemed withdrawn, we will, in the interest of fairness and caution, consider Lyons's belated arguments and legal support for his request that he be given a second opportunity to try his claims before a jury.

Upon consideration of Lyons's brief, the motion for a new trial will be denied on its merits for the reasons explained briefly below.

## II.   <u>SUMMARY OF PLAINTIFF'S ARGUMENTS</u>

In his brief, Lyons "raises the following issues for consideration" (Doc. 212, at 2):

1.   The jury verdict was wholly against the weight of the evidence presented at trial;

2.   The Court abused its discretion to deny Lyons the right to present subpoenaed witness, Anthony Boyking, before the jury for impeachment purposes after Boyking had unequivocally informed the Court that he would not testify at trial, regardless of any sanction the Court might impose as a result of his refusal;

3.   The Court's was in error by instructing the jury that they should not infer that Mr. Boyking's refusal to testify as reflecting negatively on either Lyons or the defendants;

4

4.  The Court abused its discretion by allowing Defendants to alter their initial answer to the complaint once they became aware that Plaintiff intended to enter admissions into evidence during trial;

5.  The Court abused its discretion by denying Plaintiff leave to have Defendants' initial answers to the complaint entered into evidence;

6.  The Court abused its discretion by denying Lyons's objections to counsel's closing arguments, which Lyons believed improperly appealed to the jurors' passion and sympathy by causing them to focus on the Defendants' role as parents, "which was a subliminal affront on Plaintiff's criminal conviction";

7.  Defense counsel improperly appealed to the jurors' passion and sympathy for the Defendants' "safety and the dangers they faced being on the job in the SMU was improper and prejudicial to Plaintiff's case";

8.  The Court abused its discretion by allowing Defendants to re-open discovery deadlines and deadlines for filing dispositive motions without providing Plaintiff with an opportunity to object; and

9.  The Court abused its discretion by compelling the plaintiff to agree upon a joint stipulation that certain admissions to the allegations in the complaint were entered in error by Defendants' prior counsel.

(Doc. 212, at 2-4.)

Although Plaintiff initially sketched these nine points of asserted error by the Court, he ultimately briefed only three issues, two of which are closely related and will be treated together.

First, Plaintiff has briefed his argument that the jury's verdict was "wholly against the weight of the evidence presented at trial." (Doc. 212, at 4.) Second, Plaintiff has provided argument and a short legal discussion in support of his contention that the Court abused its discretion when it denied Lyons' request to present witness Anthony Boyking before the jury for impeachment purposes, notwithstanding the fact that Boyking had informed the Court in clear and convincing fashion that he would refuse to answer any questions put to him during trial. Third, and closely related to Lyons's second asserted point of error, Lyons argues that the Court erred by instructing the jurors that they should not permit Boyking's unavailability to testify to reflect negatively on either Plaintiff or Defendants.

Because Plaintiff has failed to offer any argument or other briefing in support of his remaining six points of dispute (points 4 through 9, above), we find that Lyons is now deemed to have abandoned these asserted errors as grounds supporting his

motion for a new trial in this case.[2]  See Local Rule 7.5.  We will, accordingly, limit our discussion to the three issues that Lyons has briefed in support of his motion.  As explained below, we find all three claims to be meritless, and the motion for a new trial will be denied.

## II.   **DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 59, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The decision to grant or deny a new trial is committed to the sound discretion of the trial court.  Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980).

---

[2]  Although we find it unnecessary – and, indeed, wholly unwarranted – to discuss at length Lyons's unbriefed arguments, we note that they substantially appear to take issue with this Court's exercise of its discretion with respect to evidentiary matters or argument at trial, and provide no cogent or compelling basis for ordering a new trial in this case – one that was tried fairly, and with Lyons receiving a wide latitude to try his case as a *pro se* litigant.  A district court's evidentiary rulings at trial are committed to the district court's discretion, and to show that the court erred the aggrieved party "must show that the court's decision was arbitrary, fanciful or clearly unreasonable."  Moyer v. United Dominion Indus., Inc., 473 F.3d 532, 542 (3d Cir. 2007).  Plaintiff has done nothing to show that the Court's evidentiary and trial rulings were incorrect, much less to show that any were "arbitrary, fanciful or clearly unreasonable," or otherwise to show that Lyons was somehow denied a fair opportunity to try his claims in this action.

### A.     Weight of the Evidence

Lyons first argues that he is entitled to a new trial on his claims because the jury's verdict in favor of the Defendants was against the weight of the evidence presented at trial.  We disagree.

"New trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  Vargo v. Coslet, 126 F. App'x 533, 534 (3d Cir. 2005) (quoting Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993)); see also Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991).  "This limit upon the district court's power to grant a new trial seeks to ensure that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'"  Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992).

The failure to move for judgment as a matter of law at the close of all evidence at trial waives a party's right to file post-trial motions seeking a new trial on sufficiency of evidence grounds.  Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir. 1991) (citing Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 132 (3d Cir. 1965)).  However, the Third Circuit has instructed that where a challenge is made to the weight of the evidence, as opposed to the sufficiency of the evidence, a party

may move the court to exercise its discretion to grant a new trial "because the probative evidence in favor of the movant as contrasted with that opposed to it is overwhelming." Vargo, 126 F. App'x at 535 (citing Greenleaf v. Garlock,, Inc., 174 F.3d 352, 365 (3d Cir. 1999)).  In this case, Lyons has framed his challenge as one that focuses on the weight of the evidence presented at trial, and we will, therefore, consider his claims on that basis.

We need to devote little time rehashing the evidence that was presented at the trial.  Plaintiff complains, in very general fashion, that the weight of the evidence presented in support of his claims at trial should have compelled the jury to find in his favor.  But review of Lyons arguments reveal them to be nothing more than that – mere argument that if the jury had only viewed the evidence the way Lyons wished they had seen it, they would have found in his favor.

Thus, Lyons begins his argument regarding the weight of the evidence at trial by initially noting that it is not genuinely disputed that he sustained some degree of injury as a result of his altercation with Anthony Boyking.  (Doc. 212, at 4)  Lyons next points to testimony that his witnesses presented, which generally supported Lyons claim that the Defendants did not immediately enter the exercise cage where Boyking and Lyons were discovered to be fighting, but instead remained outside,

cheering Boyking on.  (<u>Id.</u>, at 5.)   Plaintiff then offers his own subjective interpretation on the import of this evidence.  (<u>Id.</u>)

Lyons declines to note that during trial, the corrections officers denied cheering on Boyking, and although they admittedly delayed entering the cage, the Defendants presented testimony that this was standard practice to ensure officer safety in responding to inmate fights.  Clearly, the jury was entitled to disbelieve the account presented by Plaintiff's witnesses, and was entitled to credit the testimony of the Defendants, which they apparently found worthy of belief.  Nothing about Plaintiff's argument regarding this testimony – which was plainly in conflict – supports his motion for a new trial.

In addition, Plaintiff notes – and seemingly acknowledges – a conflict in the testimony from the Defendants, in which they denied entering into any agreement with Boyking whereby he would assault Lyons in exchange for special treatment within the prison, and the testimony of various inmates claiming the Defendants had solicited them to do harm to Lyons.  (<u>Id.</u>, at 6.)  Lyons suggests that the testimony of the inmates must be true, concluding that Boyking was the only inmate to agree to the Defendants' offer – apparently because Boyking actually did engage in an affray with Lyons in the exercise cage.  Setting aside the entirely conclusory reasoning that Lyons employs here, which is wholly unpersuasive, Lyons himself recognizes that the

Defendants, under oath, disputed the inmates' testimony.  Thus, Lyons notes that the "critical evidence" of his witnesses "could not [be] refute[d] other than by mere denial."  (Id.)  Resolving the dispute among the testimony of the witnesses at trial is precisely the function of the jury, and they discharged this obligation in this case by considering, accepting, and rejecting, certain of the testimonial evidence they were presented at trial.  Nothing about their evaluation of this evidence provides grounds for a new trial in this case.

Next, Plaintiff complains that the jury ignored evidence at trial about the medical injuries he claimed to have suffered, including evidence of a broken rib.  Arguing that the Defendants' attempts to cast doubt on, or minimize Plaintiff's injuries through medical witness testimony was "shortsighted", Plaintiff complains that one of the Defendants' witnesses admitted to being skeptical about inmate claims of injury, and another testified that Plaintiff appeared to have signs of bruising in an area of his ribs.  In addition, Plaintiff attempts to cast doubt on these witness' testimony by noting that another witness, Nurse Darward, testified incorrectly about the location of Plaintiff's injuries along his rib cage.  (Id., at 7.)  Upon consideration, we cannot perceive how this "crucial evidence" that Plaintiff contends the jurors "chose to ignore" presents grounds for a new trial.

11

As a threshold matter, it is far from clear that the jury "chose to ignore" this evidence; the jury rendered no finding as to whether or not Plaintiff, in fact, suffered any injuries relating to his fight with Boyking.  Rather, through its verdict, the jury concluded only that Plaintiff had not proven by a preponderance of the evidence that the Defendants caused Plaintiff's alleged injuries.  Nothing about this process, or the conclusions the jury reached upon consideration of this evidence, supports Plaintiff's request for a new trial.

Moreover, Plaintiff presented no countervailing *medical* evidence – aside from his own lay testimony, in which he offered general observations about pain he suffered following his fight with Boyking – that would demonstrate that the jurors ignored the weight of the evidence supporting Plaintiff's claims.  In point of fact, there was no such evidence for the jury to consider, and their consideration of the testimony actually presented by the prison's medical officials provides no grounds for the Court to grant a new trial.

Finally, any dispute among the parties about the extent of Plaintiff's injuries is irrelevant to the current motion.  Even assuming that Plaintiff's rib was broken, and that he suffered injuries relating to the fight with Boyking, this would not entitle Lyons to a new trial, since the relevant issue at trial was whether the Defendants were responsible for causing or facilitating these injuries.  Clearly, the jury concluded that

they were not, and the jury was presented with substantial evidence offered by the Defendants and their witnesses to support the jury's verdict in this regard.

Finally, Plaintiff contends that the jury improperly ignored other evidence that Plaintiff insists would have supported this theory regarding his claims, including Plaintiff's own self-serving testimony that he notified the prison's program review committee that guards were conspiring with Boyking to arrange for a fight with Lyons, and that he unsuccessfully attempted to avoid the fight by notifying the prison's superintendent and other corrections officers.  According to Lyons, his efforts were unsuccessful and he felt he had no choice but to enter the exercise cage with Boyking, where the fight ultimately ensued.  (Doc. 212, at 7-8)

Upon consideration, we find this argument to be little more than a recasting of the Plaintiff's own testimony at trial, testimony that the jury was free to consider and evaluate at that time.  The jury was also presented with evidence that undermined Plaintiff's claims in this regard, including testimony by the corrections officers that they never arranged for Lyons and Boyking to fight one another, and that they did not threaten to punish Lyons if he refused to go to the yard in order to avoid coming into contact with Boyking.  Thus, even assuming that Lyons's own testimony was conceivably favorable to his claims, we disagree with Lyons that the jury "completely ignore[d]" the evidence.  Rather, the jury appears to have found more credible the

testimony of the Defendants and their witnesses, which cast doubts on Plaintiff's own self-interested testimony that, in any event, was hardly overwhelming in terms of offering support for his claims in this case.

Because we continue to find that this was a case in which Plaintiff and Defendants were given a fair opportunity to present evidence in support of their respective positions, and because the parties did an able job presenting such evidence to the jury, which ultimately rendered a decision after considering the evidence presented by both sides, we reject Plaintiff's conclusory argument that the jury ignored the overwhelming weight of the evidence in reaching a decision in favor of the Defendants. Evidence was presented on both sides, much of it conflicting, and the jury discharged its obligation to choose which evidence to believe, and which to disbelieve. That they did so and found against Lyons is no reason to order a new trial in this action.

### B. Excluding the Testimony of Anthony Boyking and Declining to Instruct the Jury Regarding an Adverse Inference Does Not Present a Basis for a New Trial.

Next, Plaintiff claims that he is entitled to a new trial because the Court abused its discretion when it denied Plaintiff an opportunity "present subpoenaed witness Anthony Boyking to before the jury for impeachment purposes." (Doc. 212, at 8) It appears that by making this argument, Lyons is asserting that the Court

14

should have permitted him to call Boyking as a witness in the jury's presence, notwithstanding Boyking's adamant refusal to answer questions even under penalty of contempt or other sanction. Lyons claims that he wished to allow the jury to witness Boyking refuse to answer his questions, and thereby somehow to raise an inference that Boyking's refusal to testify should be interpreted adversely against the Defendants. In making this argument, Lyons seems to be suggesting that an adverse inference should lie against Boyking, and, by extension, the Defendants, because Lyons's theory in this case was the Defendants conspired with Boyking to assault Lyons.

Thus, Lyons wished to further his own claim that Boyking was "a willing and joint participant in the attack" by suggesting that his refusal to testify for either party should somehow give rise to an adverse inference against the Defendants alone. (Doc. 212, at 9) The Court fully considered Lyons's position in this regard at trial, and found it unsupported and unfair to all parties and to the trial process itself. Upon consideration of the pending motion, the Court stands by its original ruling, and finds no basis to conclude that its ruling was improper, much less that it warrants a new trial. Although Lyons has attempted to offer some case law in support of his argument that the Court abused its discretion in declaring Boyking to be unavailable for either party, review of that case law reveals that it is entirely

15

distinguishable from the facts of this case, and offers no support for Lyons's motion in any event.

Plaintiff first suggests that <u>United States v. McKinney</u>, 695 F. Supp. 2d 182 (E.D. Pa. 2010), supports his claim that he should have been able to call Boyking, and to obtain an adverse inference after he refused to testify.   But <u>McKinney</u> contains no such holding, and is factually and legally inapposite to this case. <u>McKinney</u>, a criminal case, came before the court on the defendant's motion to suppress certain evidence that he claimed law enforcement authorities unlawfully obtained, including statements that he made to agents during a search of his office, statements he made during an administrative hearing, and physical evidence seized during a search.   695 F. Supp. 2d at 185.

What it appears Lyons focused on in <u>McKinney</u> is the issue of whether a party's refusal to answer questions during a civil proceeding on the basis that any testimony given might result in self-incrimination can give rise to an adverse inference.   <u>Id.</u> at 194.   The district court observed that "administrative fact-finders are generally permitted to draw adverse inferences from a defendant's failure to testify.   '[T]he prevailing rule is that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the

inference where the privilege is claimed by a *party to a civil cause*.'" Id. at n.3 (quoting Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).

Thus, the issue presented in McKinney was whether the defendant could be forced to choose at an administrative hearing to testify, and risk making incriminatory statements that could be used in a subsequent criminal proceeding, or assert his Fifth Amendment privilege and risk the trier of fact drawing an adverse inference from his refusal to testify. Upon consideration, the district court found that McKinney's statements made during his administrative hearing were admissible in his criminal prosecution, and his Fifth Amendment rights were not violated when he chose to testify at that hearing. Id. at 196.

As this factual overview shows, McKinney is simply irrelevant to Boyking's refusal to testify during Lyons's trial. Boyking – a non-party witness – had not been shown to have made any prior admissions that might have been introduced for impeachment purposes, or that might conceivably have given rise to an adverse inference against Boyking himself, let alone the Defendants. Indeed, nothing in McKinney suggests that Lyons should have been permitted to seek an adverse inference against the Defendants based upon Boyking's refusal to testify.

Lyons has also directed the Court to Evans v. City of Chicago, 513 F.3d 735 (7th Cir. 2008) and Sagendorf-Teal v. County of Rensselaer, 100 F.3d 270 (2d Cir.

1996) as support for his position.  We have reviewed these non-binding circuit decisions, and find that neither offers support for Lyons's motion.  In Evans, the issue was whether the district court abused its discretion by permitting Defendants to testify at trial after they had invoked the privilege against self-incrimination during discovery in the case.  A majority of the panel in Evans found that given the deferential review that applied, it was unable to conclude that the district court judge abused its discretion in permitting the officers to testify at trial, and in refusing to permit the plaintiff from making any reference to the defendants' prior invocation of their Fifth Amendment privilege.  513 F.3d at 738-747.  The factual issues at issue in Evans are different in kind to those at issue in the instant case.  Furthermore, even in that case, which presented far different issues, the Seventh Circuit Court of Appeals upheld the district court's ruling at trial on the basis that it was an appropriate exercise of discretion.

In Sagendorf-Teal, the issue was whether the trial court properly exercised its discretion by giving the jury a "missing witness" charge that allowed the jury to draw an adverse inference from the fact that the defendants had not called to the stand a number of corrections officers who had been directly involved in the issues presented in that case.  100 F.3d at 275.  The Second Circuit Court of Appeals held that a trial court could exercise its discretion to give a missing witness charge when

18

"a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction," yet fails call those witnesses.  Id. (quoting United States v. Torres, 845 F.2d 1165, 1169 (2d Cir. 1988)).

The "missing witness" charge thus permits the jury to infer that the testimony of the absent witnesses would have been unfavorable to the party who had the power to secure their appearance at trial.  Id.  Whether a witness is equally available to either party depends not just on the physical availability or accessibility of the witness, "but on all the facts and circumstances bearing on the relationship of the witness to the parties."  Id.  The Second Circuit further noted that "[w]here . . . the missing witness is as likely to favor one party as the other, then the judge must give the charge, if at all, against both parties."  Id.

Although the court found the missing witness charge to have been properly given in that case, it is factually distinguishable from the instant action.  Whereas in Sagendorf-Teal, the trial court had a basis to conclude that the corrections officers were more readily available to the defendants, that the defendants could have secured the witness' attendance, and that their testimony would have "elucidate[d] the transaction," the same can hardly be said of Anthony Boyking. Anthony Boyking is an inmate in the custody of the Pennsylvania Department of Corrections; he is not an employee of the Defendants, and there was insufficient

19

evidence that could have caused the Court to conclude that he was more readily available to the Defendants than to Lyons. More fundamentally, whereas in Sagendorf-Teal the defendants made a tactical decision not to call the witnesses, in this case it was the Plaintiff who called Boyking to testify, and Boyking refused. Boyking made it clear that he would decline to answer questions from the parties or the Court. Accordingly, we find that there was no basis to penalize the Defendants for Boyking's recalcitrance.

As Lyons is fully aware, although Boyking had been subpoenaed to testify at trial, he made it clear to the Court and to the parties outside of the jury's presence that he would refuse to answer any questions put to him at trial if he was called as a witness. Boyking thus presented as an especially difficult witness, who steadfastly refused to comply with his obligation to testify, and who wryly observed that since he was already imprisoned, there was little the Court could do to compel his testimony through sanctions or a finding of contempt. Upon consideration of Boyking's refusal, the Court found it had no option that was fair to all parties other than to inform the jury that Boyking was unavailable to testify, and that the jury should not interpret his unavailability as reflecting negatively on either Plaintiff or Defendants.

Although Lyons continues to believe he should somehow have benefitted from Boyking's refusal, there is absolutely no basis – other than Lyons's own unsupported insistence – that Boyking should have been considered a conspirator with Defendants, or that there was any other basis to penalize Defendants for a non-party's refusal to testify at trial. The Court stands by its ruling at trial regarding Boyking's unavailability and the instruction to the jury not to interpret Boyking's unavailability as reflecting negatively on either Plaintiff or Defendants. Furthermore, although we continue to find this ruling to be correct, it was also a matter of discretion, and Lyons has not demonstrated that the Court abused its discretion in making this ruling, or that the ruling itself led to a miscarriage of justice justifying setting aside the jury's verdict, and ordering a new trial.

## IV.  <u>ORDER</u>

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiff's motion for a new trial (Doc. 207) is DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: December 29, 2011